FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 18, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

QUANAH M. SPENCER,

                Plaintiff,

     v.

CITY OF SPOKANE, a municipal corporation in and for the State of Washington; GREGORY PAUL LEBSOCK, in his individual and official capacities; SPOKANE COUNTY, a municipal corporation and political subdivision of the State of Washington; and CASEY A. EVANS, in his individual and official capacities,

                Defendants.

NO: 2:19-CV-100-RMP

ORDER RESOLVING DEFENDANTS' DISPOSITIVE MOTIONS AND PLAINTIFF'S MOTION FOR A CONTINUANCE OF SUMMARY JUDGMENT

BEFORE THE COURT are Defendant Lebsock and City of Spokane's

Motion for Summary Judgment, ECF No. 26, and Defendant Evans and Spokane

County's Motion for Judgment on the Pleadings, ECF No. 21. In Plaintiff Spencer's

Response to Defendants' Motion for Summary Judgment, he moved for a

continuance of the Court's consideration of Defendants' Motion for Summary

Judgment pursuant to Federal Rule of Civil Procedure 56(d). The Court considers

that motion as well. A hearing on these matters was held on September 13, 2019,

and all parties were present and represented. The Court has considered the record,

the pleadings, counsels' oral argument, and is fully informed.

## BACKGROUND

In 2017, Quanah Spencer and his wife Gwen Spencer filed a consumer

protection lawsuit regarding property they had purchased in Spokane against SAS

Oregon, LLC and former employees of the Spokane Police Department. ECF No.

22-2 at 2; ECF No. 1 at 10. Attorney Aaron Kandratowicz represented them. *See id*.

The Spencers did not prevail in their lawsuit, and the court ordered garnishment of

Mr. Spencer's wages to pay the defendants' attorneys' fees in the amount of

$37,102.50. ECF No. 22-2 at 2. Mr. Spencer's employer, Burlington Northern

Santa Fe (BNSF), was notified of the garnishment through a writ.

However, after the writ of garnishment was entered, the Spencers' attorney,

Mr. Kandratowicz, told the Spencers that he had obtained an order for a permanent

injunction of the order of garnishment, shielding Mr. Spencer from further wage

garnishment. *See* ECF No. 1 at 9. In truth, the court had issued no such order. Mr.

Kandratowicz was charged with forging the order and eventually pleaded guilty to

the charge. *See* ECF No. 1 at 23. Upon learning of the purported injunction, Mr.

Spencer used his credit card at a UPS store to fax the order to his employer, BNSF.

*See id*.; ECF No. 22-2 at 4. BNSF stopped garnishing his wages after receiving the

1   forged order.  *Id*. at 3.  Fifteen months later, counsel for SAS Oregon discovered the

2   purported injunction and contacted Mr. Kandratowicz and the court.  *Id*.  Mr.

3   Kandratowicz did not respond to counsel's communications, nor did he appear at a

4   show cause hearing set for November 20, 2017, regarding the purported injunction.

5   *See* ECF No. 1 at 11.

6        The court notified the City of Spokane Police Department (SPD), which

7   promptly initiated an investigation regarding who had forged the order.  SPD

8   assigned Defendant Lebsock to investigate the case.  *See* ECF No. 22-2.   On

9   January 5, 2018, Officer Lebsock submitted an Affidavit of Facts, setting out facts to

10  support probable cause as to Mr. Spencer, and requesting a warrant for Mr.

11  Spencer's arrest.  ECF No. 22-2.  A warrant was issued that same day for Mr.

12  Spencer's arrest.  ECF No. 22-3.  Mr. Spencer was living in Missoula, Montana at

13  the time.

14       In his Affidavit of Facts, Defendant Lebsock laid out facts to support probable

15  cause for a forgery charge against Mr. Spencer.  ECF No. 22-2 at 1, 8.  Officer

16  Lebsock's investigation revealed that Mr. Spencer had used his credit card to fax the

17  forged order to his employer.  *Id*.  Detective Lebsock's Affidavit of Facts did not

18  mention that Mr. Kandratowicz was a person of interest or a target for further

19  investigation even though Mr. Kandratowicz had failed to appear at a show cause

20  hearing regarding the forged order several weeks earlier.   ECF No. 1 at 13–14.

21

However, Officer Lebsock did note that the forged order was marked with the stamp of Mr. Kandratowicz's law firm.  *See* ECF No. 22-2 at 4.

In addition to Officer Lebsock's Affidavit of Facts, Deputy Prosecuting Attorney (DPA) Evans submitted a "Certificate" in support of the arrest warrant. The Certificate states that "there exists good cause to issue a direct warrant for the immediate arrest of the defendant."  ECF No. 22-4 at 1.  It also provides supporting reasons, which include: (1) the nature of the allegations; (2) "the defendant's multi-state business dealings between Washington and Montana and the potential risk for the defendant to seek refuge outside the state of Washington"; (3) the defendant may not respond to a summons because he appears to live at his Montana residence; and (4) the potential to "interfere with the administration of justice considering the nature of these allegations and the risk of evidence tampering or destruction."  *Id*.

A warrant was issued, and on January 11, 2018, Mr. Spencer was arrested in his home in Montana.  ECF No. 1 at 16.  The following day, a judge in Missoula County ordered that Mr. Spencer be released immediately.  *Id*.  However, he was not released until January 16, 2018.  According to Mr. Spencer, one of the jail guards told him that somebody from Spokane had called and "cancelled his release."  *Id*. at 16–17.  Detective Lebsock agrees that he called the Spokane County judge who issued the arrest warrant, after learning that Mr. Spencer was about to be released from Missoula County Jail.  ECF No. 28 at 15.  Detective Lebsock states that, after he contacted the Spokane County judge, the judge "contacted someone either at the

Missoula County Jail or at Missoula County Superior Court to discuss the warrant." *Id*.

On January 16, 2018, when Mr. Spencer was released from jail, he realized that his debit card was missing from his wallet, and his coat was ripped and torn. *Id*. at 18. Mr. Spencer claims that Detective Lebsock caused his debit card to go missing and his jacket to be torn through alleged connections at Missoula County Jail. *Id*.

On February 27, 2018, the charge against Mr. Spencer was dismissed. *Id*. at 24. Prior to the dismissal order, SPD obtained a search warrant for Mr. Kandratowicz. ECF No. 1 at 19. He was never arrested or taken into custody. *Id*. He pleaded guilty on May 11, 2018, to having forged the order enjoining the garnishment. *Id*. As punishment for his actions, DPA Evans recommended six months of community custody, and no jail time. *Id*.

Mr. Spencer filed his complaint in this Court on March 29, 2019. *See* ECF No. 1. The Spencers are both Native American and argue that Defendants acted in a racially discriminatory manner toward Mr. Spencer in their investigation and prosecution of Mr. Kandratowicz's crime. They also allege that the Defendants were motivated to harm Mr. Spencer because Mr. Spencer had recently sued former SPD employees in a 2017 lawsuit. Against each defendant, Mr. Spencer alleges violations of his constitutional rights under the Fourth and Fourteenth Amendments. He also alleges the following state law claims against each defendant: false

imprisonment, abuse of process, malicious prosecution, negligence, conspiracy, intentional infliction of emotional distress, and negligent infliction of emotional distress.  Furthermore, Mr. Spencer alleges that the City of Spokane and Spokane County are liable for the actions of their employees, Evans and Lebsock, through a *respondeat superior* theory.

Defendants Spokane County and DPA Evans filed a 12(b) and 12(c) motion to dismiss.  *See* ECF No. 21.  In their motion, Defendants argue that DPA Evans has absolute immunity and, in the alternative, qualified immunity.  *Id*. at 6, 16.  Detective Lebsock and the City of Spokane have moved for summary judgment on all of Mr. Spencer's claims.  *See* ECF No. 26.  They argue that Mr. Spencer has failed to support his claims against them, and that Detective Lebsock is entitled to qualified immunity.  Mr. Spencer has asked the Court to either deny summary judgment or to continue summary judgment pursuant to Rule 56(d) in order for additional discovery to be completed.

## LEGAL STANDARD

### *Motion for Judgment on the Pleadings*

Although the parties agree that the Motion to Dismiss brought by the County and DPA Evans is a motion for judgment on the pleadings, they disagree about the applicable legal standard.  Mr. Spencer argues that the Court should decide the motion using the summary judgment standard because Defendants have supported their motion with documents outside the pleadings.  Rule 12(d) states that a court

must apply the summary judgment standard to 12(c) motions if it considers "matters outside the pleadings" in its decision. Fed. R. Civ. P. 12(d). However, a document is "not outside the complaint if the complaint specifically refers to the document and if its authenticity is not challenged." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). A defendant may attach these documents to a 12(c) motion for the court's consideration without converting the motion to a motion for summary judgment. *Id*. A court also may consider any documents of which it may take judicial notice pursuant to Federal Rule of Evidence 201 when deciding a Rule 12(b)(6) motion to dismiss, without converting it to a motion for summary judgment. *Id*.

Here, Defendants have attached the Information, Officer Lebsock's Affidavit of Facts filed January 5, 2018, the order issuing Mr. Spencer's arrest warrant, and Mr. Evan's Certificate. ECF Nos. 22-1–22-4. Mr. Spencer referenced these documents in his complaint, quoting two of them at length. Therefore, the applicable standard for Defendants' Motion to Dismiss is set out in Rule 12(b)(6).

Pursuant to Rule 12(b)(6), a plaintiff's claim will be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a Rule 12(b)(6) motion to dismiss, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not required, however, to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

***Motion for Summary Judgment***

A court may grant summary judgment where "there is no genuine dispute as to any material fact" of a party's prima facie case, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 324.

The moving party bears the burden of showing the absence of a genuine issue of material fact, or in the alternative, the moving party may discharge this burden by

showing that there is an absence of evidence to support the nonmoving party's prima

facie case. *Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party

to set forth specific facts showing a genuine issue for trial. *See id.* at 324. The

nonmoving party "may not rest upon the mere allegations or denials of his pleading,

but his response, by affidavits or as otherwise provided . . . must set forth specific

facts showing that there is a genuine issue for trial." *Id.* at 322 n.3 (internal

quotations omitted). The Court will not infer evidence that does not exist in the

record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). However,

the Court will "view the evidence in the light most favorable" to the nonmoving

party. *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1111 (9th Cir. 2016). "The

evidence of the non-movant is to be believed, and all justifiable inferences are to be

drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

### I.  Detective Lebsock and the City of Spokane's Motion for Summary Judgment

#### A. Fourth Amendment Claim

Mr. Spencer brings his constitutional challenges through 42 U.S.C. § 1983.

"Traditionally, the requirements for relief under [§] 1983 have been articulated as (1)

a violation of rights protected by the Constitution or created by a federal statute, (2)

proximately caused (3) by the conduct of a 'person' (4) acting under color of state

law." *Crumpton v. Gates*, 947, F.2d 1418, 1420 (9th Cir. 1991). For the purposes of

Section 1983 litigation, municipalities are considered "persons," and may be found liable if their policies or customs cause the plaintiff's constitutional injury. *Long v. Cty. of L.A.,* 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1976)).

Mr. Spencer alleges that the Defendants acted together to violate his Fourth Amendment right to be free of unreasonable searches and seizures. He states that the warrants[1] used to search his property and to arrest him lacked probable cause. ECF No. 1 at 33. The Spokane County judge who issued the arrest warrant found, after considering "an affidavit establishing probable cause," that "probable cause exist[ed] for the arrest and detention" of Mr. Spencer. ECF No. 22-3. Mr. Spencer does not contest the judge's finding of probable cause on the facts put before him. However, Mr. Spencer maintains that the Affidavit of Facts submitted by Detective Lebsock was judicially deceptive, containing materially incomplete information and false statements. ECF No. 1 at 33. In addition to that Affidavit, DPA Evans submitted a Certificate to the county court, explaining the reasons why an arrest warrant should issue. ECF No. 22-4. Mr. Spencer maintains that DPA Evans'

---

[1] The Complaint states that there were "warrants" at ECF No. 1 at 33, but Plaintiff's factual allegations pertain only to the arrest warrant, dated January 5, 2018. *See, e.g.*, ECF No. 1 at 38–39 (referencing only the Affidavit of Facts and Certificate used to procure an arrest warrant and making no mention of search warrant procedures). Additionally, the parties' briefing and oral arguments only addressed the arrest warrant. Therefore, the Court focuses its analysis only on the arrest warrant.

Certificate contained false statements and lacked material information, thereby making it judicially deceptive. A warrant based on judicial deception cannot provide the basis for a constitutional search, seizure, or arrest. *See Butler v. Elle*, 281 F.3d 1014, 1023–24 (9th Cir. 2002).

### 1. Judicial Deception Claim Against Detective Lebsock

Detective Lebsock, along with the City of Spokane, has moved for summary judgment on Mr. Spencer's Fourth Amendment judicial deception claim. To survive summary judgment on a judicial deception claim, the plaintiff must "(1) make a substantial showing of deliberate falsehood or reckless disregard for the truth, and (2) establish that but for the dishonesty, the challenged action would not have occurred." *Id*. at 1024. If the plaintiff meets these two prongs, then, "the matter should go to trial." *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (quoting *Hervey v. Estes*, 35 F.3d 784, 788–789 (9th Cir. 2002)).

In a judicial deception analysis, the question of materiality is for the Court to decide. *Id*. ("Materiality is for the court, state of mind is for the jury.") (citing *Hervey,* 65 F.3d at 789 (9th Cir. 1995)); *see also Bravo v. City of Santa Maria*, 665 F.3d 1076, 1084 (9th Cir. 2011). To determine if an alleged false statement or omission is material, the court must consider "whether the affidavit, once corrected and supplemented, establishes probable cause." *Bravo*, 665 F.3d at 1084 (quoting *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009)). "If probable cause remains after amendment, then no constitutional error has occurred." *Id*.

Probable cause exists "when police officers have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect . . . committed . . . a crime." *United States v. Wallace*, 213 F.3d 1216, 1220 (9th Cir. 2000). The existence of probable cause depends on the unique facts and circumstances of each case. *Id*. District courts evaluate the existence of probable cause using an objective test; while the facts within the arresting officer's knowledge are relevant to the assessment, the officer's state of mind is not relevant. *Devenpeck v. Alford*, 543 U.S. 146, 593–94 (2004) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996) (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978))). The Supreme Court repeatedly has explained that "[s]ubjective intent alone . . . does not make otherwise lawful conduct illegal or unconstitutional." *Whren*, 517 U.S. at 813 (quoting *Scott*, 436 U.S. at 138).

Mr. Spencer argues that Detective Lebsock included false information in his Affidavit of Facts to obtain the arrest warrant. The first allegedly false statement involves the transmission of the forged order to Mr. Spencer's employer, BNSF. The parties agree that Mr. Spencer faxed this order to his employer. *See* ECF No. 1 at 9. However, in his Affidavit of Facts, Detective Lebsock states "it would be logical to conclude" that the issuing court or Mr. Kandratowicz would have faxed the order to Mr. Spencer's employer if the order had been valid. *Id*. at 12; ECF No. 22-2 at 4. Mr. Spencer argues that this reasoning is illogical and therefore constitutes a false statement. ECF No. 1 at 13.

Next, Mr. Spencer argues that Officer Lebsock falsely stated that Mr. Kandratowicz "consistently represented" the Spencers.  *Id*.  He contends that Officer Lebsock knew this statement was false because Mr. Kandratowicz had failed to appear for the show cause hearing regarding the forged order.  Therefore, he was not "consistently" representing the Spencers.  *Id*.  Similarly, Mr. Spencer argues that Detective Lebsock omitted material information about Mr. Kandratowicz in his Affidavit of Facts, namely Mr. Kandratowicz's failure to appear at the show cause hearing.  Mr. Spencer also argues that Detective Lebsock should have indicated that Mr. Kandratowicz was a possible suspect for the forgery.  *See id*. at 13–15.  Mr. Spencer maintains that, had the issuing judge been aware of this information, the judge would not have found probable cause to arrest him.  *See id*.

The Court first addresses the materiality prong of Mr. Spencer's judicial deception claim.  Apart from making conclusory statements, Mr. Spencer has not explained why the alleged false statements and omissions are material.  Even when the Court removes any allegedly false information and supplements the missing information about Mr. Kandratowicz's failure to appear, the remaining undisputed facts that support probable cause include: Mr. Spencer's wages were garnished in a state action; at some point he possessed a forged court order enjoining the garnishment of his wages; and he faxed that forged order to his employer to halt the wage garnishment, using a method of payment belonging to him.  These actions, which Mr. Spencer does not contest, would lead an officer to reasonably believe that

Mr. Spencer committed forgery by possessing, offering, or "put[ting] off as true a written instrument which he . . . kn[ew] to be forged. *See* Wash. Rev. Code § 9A.60.020.

Furthermore, the alleged material omissions regarding Mr. Kandratowicz's failure to appear would not have diminished probable cause as to Mr. Spencer. While the inclusion of this information may have implicated Mr. Kandratowicz in addition to Mr. Spencer, it would not have changed the fact that Mr. Spencer faxed a financially advantageous forged court order to his employer. Additionally, while Detective Lebsock did not state that Mr. Kandratowicz was a potential suspect for the forgery, he plainly stated in the Affidavit of Facts that the order was marked with the stamp of Mr. Kandratowicz's law firm. ECF No. 22-2 at 4. While Detective Lebsock did not include certain information about Mr. Kandratowicz, none of that missing information detracts from the significance of Mr. Spencer's actions, which support probable cause.

Because none of the allegedly false statements or omissions is material to the finding of probable cause, Mr. Spencer's judicial deception claim fails as a matter of law. Therefore, the Court does not address whether Mr. Spencer made a substantial showing of deliberate falsehood or reckless disregard for the truth.

### 2. Judicial Deception Claim Against DPA Evans

Mr. Spencer alleges that DPA Evans' Certificate, submitted in conjunction with Detective Lebsock's Affidavit of Facts, also was judicially deceptive. DPA

Evans, along with Spokane County, has moved to dismiss Mr. Spencer's Fourth Amendment judicial deception claim.

The Court considers the materiality of DPA Evans' Certificate to the finding of probable cause against him. Mr. Spencer alleges that, absent the Certificate, probable cause would not have existed to issue a warrant for his arrest. However, that allegation is a legal conclusion that this Court need not accept as true. Instead, the Court accepts as true the factual allegations in the Complaint and considers the attached documents that are considered within the pleadings. *See Branch*, 14 F.3d at 453. These include DPA Evans' Certificate and Detective Lebsock's Affidavit of Facts. ECF Nos. 22-2 and 22-4. As this Court explained previously, Detective Lebsock's Affidavit of Facts alone established probable cause for Mr. Spencer's arrest. Therefore, the statements contained in DPA Evans' Certificate were not material to the finding of probable cause. Because probable cause to issue the contested warrant existed, with or without DPA Evans' Certificate, Mr. Spencer cannot state a plausible claim for relief against DPA Evans for judicial deception under the Fourth Amendment.

## B. Equal Protection Claim

Mr. Spencer alleges that Defendants violated his Fourteenth Amendment right to equal protection. ECF No. 1 at 40. He brings his Equal Protection claim under theories of selective prosecution and selective enforcement. He alleges that Defendants treated him more harshly because of his race than they treated Mr.

Kandratowicz in the prosecution of the same crime. *See id.* He states that Mr.

Kandratowicz was not "timely, sufficiently, fully or adequately prosecuted,"

whereas Mr. Spencer was forced to spend multiple days in jail before the charges

against him were dropped. ECF No. 1 at 40. He argues that "Defendants' purported

law enforcement actions and material omissions had a discriminatory effect," and

that Defendants actions were motivated by "racial or other discriminatory animus."

*Id*. at 40–41.

    "A government entity has discretion in prosecuting its criminal laws, but

enforcement is subject to constitutional constraints." *Rosenbaum v. City & Cnty. of*

*San Francisco*, 484 F.3d 1142, 1153 (9th Cir. 2007). To succeed on either a

selective prosecution or selective enforcement claim, the plaintiff must show that the

contested action had a discriminatory effect and was motivated by a discriminatory

purpose. *United States v. Mumphrey*, 193 F.Supp.3d 1040, 1046 (N.D. Cal. 2016);

*see also, United States v. Barlow*, 310 F.3d 1007, 1009 (7th Cir. 2002) (quoting

*Armstrong*, 517 U.S. 456, 465 (1996)) ("In order to state a constitutional violation, a

selective prosecution claim must meet the 'ordinary equal protection standards'

established by the Supreme Court's jurisprudence on racial discrimination."); *Holy*

*Ghost Revival Ministries v. City of Marysville*, 98 F.Supp.3d 1153, 1175 (W.D.

Wash. 2015) (quoting *Rosenbaum*, 484 F.3d at 1152) (To succeed on a selective

enforcement claim, the plaintiff must prove "that enforcement had a discriminatory

effect and the police were motivated by a discriminatory purpose."). To show a

discriminatory effect, the plaintiff "must show that similarly situated individuals . . . were not prosecuted." *Rosenbaum*, 484 F.3d at 1153 (quoting *Armstrong*, 517 U.S. at 465). To prove discriminatory purpose, the plaintiff must show that the defendant "selected or reaffirmed a particular course of action at least in part 'because of' its adverse effects on an identifiable group." *Id*. (quoting *Wayte*, 470 U.S. 598, 610 (1985)).

Detective Lebsock and the City of Spokane have moved for summary Judgment on Mr. Spencer's equal protection claim. Mr. Spencer provides no evidence to support the first prong of his claim, disparate impact. In fact, the undisputed facts reveal that Defendants investigated and prosecuted both Mr. Spencer and Mr. Kandratowicz, and that eventually charges against Mr. Spencer were dismissed. *See* ECF No. 1 at 18–19. Mr. Spencer's Complaint acknowledges that Mr. Kandratowicz was sentenced for the crime of forgery after being prosecuted and pleading guilty. *Id*. at 20. Because Mr. Kandratowicz was prosecuted and convicted, Mr. Spencer cannot show that Defendants refused to prosecute similarly situated people. Therefore, he cannot support his claim that Defendants selectively enforced the law against him because of his race. Mr. Spencer's equal protection claim, which is premised on theories of selective enforcement and selective prosecution, fails as a matter of law.

Additionally, DPA Evans and Spokane County have moved to dismiss Mr. Spencer's equal protection claim for failure to state a claim. Mr. Spencer alleges in

his Complaint that Defendants prosecuted Mr. Kandratowicz, a person Mr. Spencer

argues is not in the protected class, for the crime at issue.  Alleged disparate

treatment between Mr. Kandratowicz and Mr. Spencer cannot provide the basis for a

selective prosecution claim because Defendants prosecuted both of them.[2]  Taking

all of the factual allegations in the Complaint as true and construing all reasonable

inferences in the light most favorable to Mr. Spencer, Mr. Spencer fails to state a

plausible violation of the Equal Protection Clause.

Mr. Spencer's Fourth Amendment and Equal Protection claims fail on

Defendants' Motion to Dismiss and Motion for Summary Judgment.  These

constitutional claims provided the basis for Mr. Spencer's Section 1983 claims.

Therefore, Mr. Spencer's Section 1983 claims are dismissed with prejudice.

### C. Qualified Immunity

In their Motion for Summary Judgment, Detective Lebsock and the City of

Spokane argue that Detective Lebsock is entitled to qualified immunity.

Government officials are entitled to qualified immunity, which shields them from

liability, "as long as their actions could reasonably have been thought consistent

---

[2] Mr. Spencer failed to plead that Mr. Kandratowicz is non-Native American.  This missing fact also would provide a basis to dismiss Mr. Spencer's equal protection claim.  However, from the briefing and oral argument on this matter, the Court understands Plaintiff's argument to be that Mr. Kandratowicz was treated better because he is not a person of color.  The Court addresses that argument in this Order, and still finds Mr. Spencer has not stated a plausible claim for relief.

with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The Supreme Court has laid out a two-part test for resolving qualified immunity claims. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. at 236. First, the court must decide whether the defendant's conduct violated a constitutional right. *Id.* at 201. Second, the court must determine whether the identified constitutional right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201. Detective Lebsock is entitled to qualified immunity because, as explained *supra*, Mr. Spencer has failed to establish a constitutional violation under either the Fourth Amendment or the Equal Protection Clause of the Fourteenth Amendment.

### D. Absolute Immunity

In their Motion for Judgment on the Pleadings, DPA Evans and Spokane County argue that DPA Evans is entitled to absolute immunity for his decision to request an arrest warrant via his Certificate. ECF No. 21 at 7. Prosecutors are entitled to absolute immunity for their actions in "pursuing criminal conduct" so long as they act as "advocates for the state" and their conduct is "intimately associated with the judicial phase of the criminal process." *Waggy v. Spokane Cty. Wash.*, 594 F.3d 707, 710 (9th Cir. 2010) (quoting *Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410, 430–31 (1976))). This absolute immunity applies to common law causes of action and Section 1983 claims. *Imbler*, 424 U.S. at 422–23. When a prosecutor performs

investigative functions not "intimately associated with the judicial phase of the criminal process," he is entitled only to qualified immunity. *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997). Whether DPA Evans is entitled to absolute or qualified immunity depends on whether he engaged in an investigative or judicial function when he filed his certificate.

In *Waggy v. Spokane County Washington*, the Ninth Circuit explained that a prosecutor's conduct in arguing for a bench warrant was entitled to absolute immunity. 594 F.3d 707, 713 (9th Cir. 2010). "[W]here a prosecutor submits a motion for a bench warrant to the court applying the law to facts alleged in supporting affidavits signed by witnesses," she is completing a judicial function and is therefore entitled to absolute immunity. *Id*. In *Waggy*, the prosecuting attorney stated facts in her motion for a bench warrant that were not found in the investigating officer's affidavit, or any other supporting documentation. Nevertheless, the Ninth Circuit concluded that the prosecutor was engaging in a judicial function by initiating a prosecution of the defendant. Therefore, she was entitled to absolute prosecutorial immunity.

Mr. Spencer argues that DPA Evans became a complaining witness when he filed his Certificate and swore to its accuracy under penalty of perjury. Therefore, he is not shielded by absolute immunity, and qualified immunity applies. He cites *Kalina v. Fletcher* in support of his argument. 522 U.S. 118, 131 (1997). In that case, a deputy prosecutor in King County Washington initiated criminal proceedings

against the defendant by filing an information, a motion for an arrest warrant, and a certificate for determination of probable cause with the court. *Id*. at 121. The certificate summarized the facts supporting a finding of probable cause and was signed under penalty of perjury. *Id*. The court issued an arrest warrant based on the facts presented by the attorney, which she swore to be accurate. However, two of the statements were false. *Id*. The Supreme Court found that the deputy prosecutor was not entitled to absolute immunity because she became a complaining witness when she provided the facts necessary to establish probable cause and swore to their accuracy. *Id*. at 122.

In this case, the facts necessary to establish probable cause did not come from Mr. Evan's Certificate. They were in Officer Lebsock's Affidavit of Facts, which was submitted to the court in addition to the Certificate. As Defendants explain, DPA Evans was arguing that an arrest warrant should issue rather than a summons, pursuant to Washington's Superior Court Criminal Rule 2.2(b)(2). ECF No. 21 at 9. That rule states:

> The court shall direct the clerk to issue a summons instead of a warrant unless it finds reasonable cause to believe that the defendant (i) will not appear in response to a summons, (ii) will commit a violent offense, (iii) will interfere with witness or the administration of justice, or (iv) is in custody.

In his Certificate, DPA Evans argues that there is good cause to issue an arrest warrant due to "the nature of the allegations," the "potential for the defendant to seek refuge outside the state," and "the potential risk for the defendant to interfere with

the administration of justice." ECF No. 22-4.  Furthermore, DPA Evans cites to

Officer Lebsock's affidavit when he states that Mr. Spencer was unlikely to respond

to a summons because his residence in Spokane was vacant.  *Id*.  DPA Evans did not

personally attest to the facts in Officer Lebsock's Affidavit of Facts.  Rather, he used

those facts to argue why the court should not issue a summons and should instead

issue an arrest warrant.  This case aligns with *Waggy*, not *Kalina*, and DPA Evans is

entitled to absolute immunity.

### E.  Whether DPA Evans' Immunity is Imputed to the County

Spokane County argues that DPA Evans' absolute immunity extends to its

own liability for Mr. Spencer's state law claims.  Generally, under Washington law,

the personal immunities of state officials do not extend to government entities.

*Babcock v. State*, 809 P.2d 143, 156 (Wash. 1991) (en banc).  However, when a

prosecutor is entitled to absolute immunity, Washington courts extend that immunity

to the County for policy reasons.  *See, e.g.*, *Creelman v. Svenning*, 410 P.2d 606, 608

(Wash. 1966) ("The public policy which requires immunity for the prosecuting

attorney, also requires immunity for both the state and the county for acts of judicial

and quasi-judicial officers in the performance of the duties which rest upon them.");

*Hart v. City of Lakewood*, No. 43304–4–II, 2014 WL 129236, at *5 (Wash. Ct. App.

Jan 14, 2014) (absolute immunity of individual city prosecutor extended to the

municipality when the prosecutor acted within his official capacity to press charges);

*Janaszak v. State*, No. 67749–7–I, 2013 WL 68584, at *5 (Wash. Ct. App. Jan. 7,

2013) (explaining that, for policy reasons, prosecutorial immunity extends to the State); *Stevenson v. State*, No. 43309–1–I, 2000 WL 422861, at *13 (Wash. Ct. App. April 10, 2000) ("[A] prosecutor's absolute immunity from tort liability extends to the governmental employer.").

For reasons this Court has already explained, DPA Evans is entitled to absolute immunity for his actions in this matter. Therefore, DPA Evans' prosecutorial immunity extends to Spokane County for Mr. Spencer's state law claims, and those claims are dismissed with prejudice.

However, whether DPA Evans' personal immunity shields the County from Mr. Spencer's Section 1983 claims is a separate matter. In Section 1983 suits, municipalities are not entitled to assert immunity. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 638 (1980); *see also Int'l Ground Transp. v. Mayor and City Council of Ocean City, Md.*, 475 F.3d 214, 219 (4th Cir. 2007). Moreover, they cannot rely on the immunity of their officers. *Id*. Therefore, DPA Evans' absolute immunity does not protect Spokane County from liability on Mr. Spencer's Section 1983 claims.

**F. Section 1983 Claims against the City and County**

Mr. Spencer argues that the City of Spokane and Spokane County are liable under Section 1983 for his arrest and prosecution. Plaintiffs may sue municipalities for constitutional deprivations under Section 1983. However, "it is only when execution of a government's policy or custom inflicts the injury that the municipality

as an entity is responsible." *Long v. Cty. of L.A.,* 442 F.3d 1178, 1185 (9th Cir.2006) (citing *Monell,* 436 U.S. at 690)). There are two key issues that the Court must address when a plaintiff asserts a Section 1983 claim against a municipality: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); see also *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.").

Mr. Spencer has alleged that the City of Spokane and Spokane County each had policies or customs that facilitated or caused the violation of his constitutional rights under the Fourth Amendment and Fourteenth Amendment Equal Protection Clause. At this point, it is unclear if the City or County has provided certain discovery to Mr. Spencer that would allow him to substantiate his allegations about the nature of their policies. However, as explained *supra*, Mr. Spencer has failed to establish that his injuries were caused by a constitutional violation. Mr. Spencer's Fourth Amendment claim fails as a matter of law because probable cause existed to arrest him. Likewise, his Fourteenth Amendment claim, premised on selective enforcement and selective prosecution, fails because Defendants prosecuted Mr. Kandratowicz for the relevant crime. Mr. Spencer's alleged injuries were not caused by a constitutional violation. Therefore, he cannot argue that City or County

policies, regardless of what they are, caused a violation of his constitutional rights under Section 1983.

## II.    Remaining State Law Claims

The Court next considers whether it has jurisdiction over Mr. Spencer's state law claims.  Mr. Spencer alleges that this Court has both supplemental and diversity jurisdiction over his state law claims.  ECF No. 1 at 3; *see* 28 U.S.C. §§ 1331–32.  Because the Court has rejected Mr. Spencer's federal claims, which provided a basis for supplemental jurisdiction, the Court next determines whether it may exercise diversity jurisdiction over Mr. Spencer's remaining state law claims.  *See* 42 U.S.C. § 1332.

Diversity jurisdiction requires complete diversity and an amount in controversy that exceeds $75,000.  *Id*.  When a plaintiff files his Complaint in federal court, the amount in controversy requirement generally is satisfied when the Complaint alleges damages in excess of $75,000.  *See Geographic Expeditions, Inc. v. Estate of Lhotka ex rel Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) (holding that a plaintiff need not prove the amount in controversy by a preponderance of the evidence to invoke diversity jurisdiction).  "The amount in controversy alleged by the proponent of federal jurisdiction—typically the plaintiff in the substantive dispute—controls so long as the claim is made in good faith."  *Id*.  For a district court to refuse to exercise diversity jurisdiction based on the amount in controversy,

it must appear to a "legal certainty" that the plaintiff's claims cannot exceed the jurisdictional amount. *Id.*

Mr. Spencer alleges that he was falsely imprisoned from January 11, 2018, to January 16, 2018. ECF No. 1 at 23. He asserts claims of malicious prosecution, false arrest and imprisonment, abuse of process, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, conspiracy, and vicarious liability. Under Washington state law, damages for such claims can exceed $75,000. *See, e.g.*, *Bender v. City of Seattle*, 664 P.2d 492, 495 (Wash. 1983) (State Supreme Court reinstated an unsegregated jury verdict of $80,000 for claims of false arrest, false imprisonment, malicious prosecution, libel and slander against City of Seattle). Additionally, Mr. Spencer has properly alleged complete diversity, as he is a resident of Montana, and Defendants are residents of Washington and Idaho. Therefore, this Court has subject matter jurisdiction to hear Mr. Spencer's state law claims through 42 U.S.C. § 1332.

However, the Court reiterates that DPA Evans has absolute immunity with respect to Mr. Spencer's state law claims, and that immunity extends to Spokane County. Therefore, the only remaining state law claims are those against Detective Lebsock and the City of Spokane. *See Creelman*, 410 P.2d at 608. The remaining claims are subject to Detective Lebsock and City of Spokane's Motion for Summary Judgment.

## A. False Arrest, False Imprisonment, and Malicious Prosecution

Defendants Lebsock and the City of Spokane have moved for summary judgment on Mr. Spencer's claims of false arrest and imprisonment, and his claim of malicious prosecution. "A false arrest occurs when a person with actual or pretended legal authority to arrest unlawfully restrains or imprisons another person." *Youker v. Douglas Cty.*, 258 P.3d 60, 68 (Wash. Ct. App. 2011). Whenever a false arrest occurs, false imprisonment is established. *Id*.

To succeed on a claim of malicious prosecution, "a plaintiff must allege and prove that (1) the prosecution was instituted or continued by the defendant, (2) there was want of probable cause . . . (3) the proceeding was instituted or continued through malice, (4) the proceeding was terminated on the merits in favor of the plaintiff or was abandoned, and (5) plaintiff suffered injury as a result of the prosecution." *Youker v. Douglas Cty.*, 258 P.3d 60, 66–67 (Wash. Ct. App. 2011) (citing *Bender v. City of Seattle*, 664 P.2d 492 (Wash. 1983)). If the facts necessary to establish probable cause are undisputed, then the Court should find that probable cause existed as a matter of law and dismiss the action for malicious prosecution. *Pallett v. Thompkins*, 118 P.2d 190, 192 (Wash. 1941); *see also Hanson v. City of Snohomish*, 852 P.2d 295, 298 (Wash. 1993) (explaining that, if probable cause exists, an action for malicious prosecution fails).

In Washington, "Probable cause is a complete defense to an action for false arrest, false imprisonment, or malicious prosecution." *Jacques v. Sharp*, 922 P.2d 145, 147 (Wash. Ct. App. 1996).

This Court already has found that Mr. Spencer was arrested pursuant to a valid warrant, and that the undisputed facts support a finding of probable cause. Therefore, Mr. Spencer was lawfully detained, and his false arrest and false imprisonment claims fail as a matter of law. Similarly, because probable cause existed, Mr. Spencer's malicious prosecution claim fails as a matter of law.

**B. Abuse of Process**

Defendants Lebsock and the City of Spokane also seek summary judgment on Mr Spencer's abuse of process claim. To succeed on this claim, Mr. Spencer must show "(1) the existence of an ulterior purpose to accomplish an object not within the proper scope of the process, and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings." *State v. Hyder*, 244 P.3d 454, 463 (Wash. Ct. App. 2011) (quoting *Saldivar v. Momah*, 186 P.3d 1117, 1130 (Wash. Ct. App. 2008)). Initiating a prosecution does not constitute an abuse of process, even when it is done with a "malicious motive." *Sea-Pac Co., Inc. v. United Food and Commercial Workers Local Union 44*, 699 P.2d 217, 220–21 (Wash. 1985) (en banc). "[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Batten v. Abrams*, 626 P.2d 984, 989 (Wash. Ct. App. 1981).

Mr. Spencer argues that "Defendants misused the judicial system's process to achieve an inappropriate end" causing him harm.  ECF No. 1 at 43.  Defendants' actions in this case were initiating a criminal proceeding against Mr. Spencer.  Detective Lebsock carried out authorized processes within the scope of a criminal prosecution, which included requesting an arrest warrant.  Therefore, Mr. Spencer's claim for abuse of process fails as a matter of law.

**C. Negligence**

Mr. Spencer also has sued Defendants for negligence under Washington State law.  He argues that, "Defendants had a duty to ensure that Mr. Spencer's constitutional rights were not violated, and that he was not injured by their investigation and prosecution efforts . . . ."  ECF No. 1 at 45.  While not specifically phrased as a claim for negligent investigation, the Court understands Mr. Spencer to allege that Defendants were negligent in their investigation and prosecution of him.  Therefore, the Court construes his claim as a claim for negligent investigation.

"In general, Washington common law does not recognize a claim for negligent investigation because of the potential chilling effect such claims would have on investigations." *Janaszak v. State*, 297 P.3d 723, 726 (Wash. Ct. App. 2013).  Such claims are properly dismissed for failure to state a claim for which relief can be granted. *See id*.  Therefore, the Court dismisses Mr. Spencer's negligence claim with prejudice because there is not a cognizable claim in Washington on this set of facts.

## D. Intentional Infliction of Emotional Distress

To succeed on his claim of intentional infliction of emotional distress, Mr. Spencer must plead and prove: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) the actual result to plaintiff of severe emotional distress." *Id*. at 632. Generally, whether conduct is "sufficiently outrageous" is a question of fact. *Spurell v. Bloch*, 701 P.2d 529, 535 (Wash. Ct. App. 1985). However, on summary judgment, the court must "determine in the first instance that reasonable minds could differ on whether the conduct has been sufficiently extreme and outrageous to result in liability." *Id*. To constitute outrageous conduct, "the conduct in question must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Dicomes v. State*, 782 P.2d 1002, 1012–13 (Wash. 1989) (quoting *Grimsby v. Samson*, 530 P.2d 921 (1975)). To survive summary judgment on the third prong of a claim for intentional infliction of emotional distress, the plaintiff must present facts that show the emotional distress he suffered was more than "transient" or "trivial." *See Kloepfel*, 66 P.3d at 633.

Here, Mr. Spencer alleges that he was arrested, searched, and prosecuted without probable cause, which led to severe emotional distress. However, this Court has found that Mr. Spencer's arrest and prosecution were supported by probable cause as a matter of law. Arresting and prosecuting an individual with probable

cause does not, in and of itself, "go beyond all possible bounds of decency."

Moreover, reasonable minds could not differ on this conclusion. *See Spurell*, 701

P.2d at 535. Therefore, Mr. Spencer cannot show that the Defendants' actions were

outrageous in character, and his claim for intentional infliction of emotional distress

fails as a matter of law.

### E. Negligent Infliction of Emotional Distress

Mr. Spencer also brings a claim of negligent infliction of emotional distress.

However, this claim is not cognizable in Washington against a police officer who

investigates a crime. *See Keates v. City of Vancouver*, 869 P.2d 88, 94 (Wash. Ct.

App. 257). As is true for a claim of negligence, the threshold issue for a claim of

negligent infliction of emotional distress is whether the defendant owed the plaintiff

a duty of care. *See id.* at 92. Under Washington law, "police officers owe no duty to

use reasonable care to avoid inadvertent infliction of emotional distress on the

subjects of criminal investigations." *Id.* at 94 (Wash. Ct. App. 257). The

Washington Court of Appeals has explained that plaintiffs who seek damages for

emotional distress for "being accused of a crime must prove the elements of

malicious prosecution," rather than the elements of negligent infliction of emotional

distress. *Id.* Because Mr. Spencer's claim is not cognizable under Washington law,

it is dismissed with prejudice.

/ / /

/ / /

### F. Conspiracy and Vicarious Liability

To succeed on a claim of civil conspiracy in Washington, the plaintiff "must prove by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy." *Woody v. Stapp*, 189 P.3d 807, 810 (Wash. Ct. App. 2008) (quoting *All Star Gas, Inc. v. Bechard*, 998 P.2d 367, 372 (2000)); *see also*, *Adams v. King Cty.*, 192 P.3d 891, 901 (Wash. 2008) (quoting *John Davis & Co. v. Cedar Glen # Four, Inc.*, 450 P.2d 166, 171 (1969)). Conspiracy alone is not an actionable claim. *Webster v. Webster*, No. 40588–1–II, 2012 WL 628228, at *6 (Feb. 28, 2012 Wash. Ct. App.). "The plaintiff must be able to show that an underlying actionable claim which was accomplished by the conspiracy for the civil claim of conspiracy to be valid." *Id*.

Similarly, a claim of vicarious liability must be premised on an underlying tort. *See Kaye v. Lowes HIW, Inc.*, 242 P.3d 27, 35 (Wash. Ct. App. 2010) (citing *Breedlove v. Stout*, 14 P.3d 897, 899 (Wash. 2001)). Vicarious liability holds an employer responsible for its employees' negligence. *Id*. Inherent in a vicarious liability claim against an employer is the wrongful action of an employee. *See id*.

Mr. Spencer's tort claims against Detective Lebsock and the City of Spokane have failed as a matter of law. Therefore, he has no underlying claim on which to

base his allegations of conspiracy and vicarious liability, and those claims must also be dismissed.

### III.    Rule 56(d) Motion to Continue

Mr. Spencer asks the Court for a continuance of summary judgment under Federal Rule of Civil Procedure 56(d).  When the nonmoving party to a motion for summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery."  Fed. R. Civ. P. 56(d)(2).  The district court may also defer the motion for summary judgment, deny it, or issue any other order it finds appropriate.  Fed. R. Civ. P. 56(d)(1), (3).  A Rule 56(d) motion may be denied when the party seeking deferral has not diligently sought discovery or additional discovery would be futile or irrelevant to the dispute.  *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002); *Nordstrom, Inc. v. Chubb & Son, Inc.*, 57 F.3d 1424, 1436 (9th Cir. 1995).

The posture of this motion is unusual.  Mr. Spencer moved for a Rule 56(d) continuance in his response to Defendants' Motion for Summary Judgment.  At that time, Defendants still had not provided discovery responses, and Mr. Spencer asked the Court for a continuance on that basis.  However, at the hearing on Defendants' Motion for Summary Judgment, both parties represented that Defendants had since provided discovery, although Mr. Spencer's counsel stated that Defendants' responses were incomplete.  At that time, the Court asked Mr. Spencer's counsel if

he would like a continuance in order to review the recently supplied discovery and file supplemental briefing. Counsel indicated that, even if a continuance was granted, he would not have a fair chance to oppose summary judgment because Defendants provided inadequate discovery. However, at no point has Mr. Spencer moved to compel discovery.

Between the briefing and the oral argument, Mr. Spencer has not shown "by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition." At the outset, the Court notes that Mr. Spencer failed to submit an affidavit or declaration focused on complying with Rule 56(d). His initial arguments, explained in briefing related to Defendants' dispositive motions, were premised on Defendants' failure to respond to discovery. Now that Defendants have produced discovery, Mr. Spencer still maintains that he cannot adequately respond to the motion, but his argument is unclear and unsupported. Based on representations made at the hearing, the Court understands that Mr. Spencer would like access to the following: (1) discovery related to Detective Lebsock's state of mind and (2) communications between the City of Spokane and Spokane County. Although Mr. Spencer's Counsel alluded to other missing information at the hearing, he did not identify that information for the Court.

**A. Detective Lebsock's State of Mind**

Even if Defendants have failed to provide evidence relating to Detective Lebsock's state of mind, that evidence is not necessary to oppose summary

judgment.  Because Mr. Spencer's arrest was supported by probable cause under an

objective analysis, no Fourth Amendment violation occurred.  The Supreme Court

has made clear that an officer's subjective thoughts and beliefs will not negate

probable cause.  *Whren*, 517 U.S. at 813.  Therefore, discovery related to Detective

Lebsock's state of mind will not support Mr. Spencer's opposition to summary

judgment on his Fourth Amendment Claim.

The Court next considers whether evidence as to Detective Lebsock's state of

mind will allow Mr. Spencer to challenge summary judgment on his Equal

Protection claim, brought under theories of selective enforcement and selective

prosecution.  While Detective Lebsock's state of mind is relevant to his Equal

Protection claim, as both theories of liability require a showing of discriminatory

intent, both theories also require Mr. Spencer to prove that similarly situated people

were not prosecuted.  Because it is undisputed that Mr. Kandratowicz was

prosecuted for the forgery charge, as Mr. Spencer was, Mr. Spencer's Equal

Protection claim fails as a matter of law.  Therefore, Mr. Spencer has failed to

establish that Defendants' actions had a discriminatory effect.  Again, information

related to Detective Lebsock's state of mind will not change this deciding fact.

The Court must also consider whether additional discovery on Detective

Lebsock's state of mind will help Mr. Spencer challenge summary judgment on his

state law claims. His malicious prosecution, false imprisonment, and false arrest

claims are all defeated by probable cause, which is governed by an objective

standard.  Therefore, testimony as to Detective Lebsock's state of mind will not help

Mr. Spencer oppose summary judgment on those claims.  Similarly, Mr. Spencer's

abuse of process claim will not benefit from additional information about Detective

Lebsock's mindset, as "there is no liability where the defendant has done nothing

more than carry out the process to its authorized conclusion, even though with bad

intentions." *Batten* 626 P.2d at 989.  Mr. Spencer's remaining state law claims fail

for reasons unrelated to Detective Lebsock's mindset.  Therefore, discovery sought

related to Detective Lebsock's state of mind is not "essential" under Rule 56(d) and

does not support a continuance of summary judgment.

## 1.  Evidence of Communication between the City and the County

Mr. Spencer also has requested communications between the City of Spokane

and Spokane County.  At the hearing, Mr. Spencer's counsel stated that he required

these communications to oppose summary judgment because they may show that the

City and County conspired to deprive Mr. Spencer of his constitutional rights.  As

this Court already has decided, no alleged constitutional rights were violated.

Therefore, the requested communications are not relevant in determining Mr.

Spencer's Section 1983 claims.  Additionally, the Court finds that the

communications requested will not assist Mr. Spencer in arguing against summary

judgment on his state law claims.

/ / /

Accordingly, **IT IS HEREBY ORDERED**:

1.     Defendants' Motion for Summary Judgment, **ECF No. 26** is **GRANTED**.  Plaintiff's claims are **DISMISSED WITH PREJUDICE** as to Defendants Lebsock and City of Spokane, and Judgment shall be entered for Defendants.

2.     Defendants' Motion for Judgment on the Pleadings, **ECF No. 21**, is **GRANTED**.  Plaintiff's claims are **DISMISSED WITH PREJUDICE** as to Defendants Evans and Spokane County, and Judgment shall be entered for Defendants.

3.     Plaintiff's Rule 56(d) Motion to Continue, made in ECF No. 36, is **DENIED**.

4.     Any remaining, pending motions in this matter are **DENIED AS MOOT**, and any hearing dates are hereby **STRICKEN**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, enter Judgement as outlined, provide copies to counsel, and **close this case**.

**DATED** November 18, 2019.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge